Order Form (01/2005)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 2949 | **DATE** | December 2, 2011 |
| **CASE TITLE** | Greebel v. Byron Udell & Assoc. | | |

**DOCKET ENTRY TEXT:**

For the reasons set forth herein, the Court GRANTS in part and DENIES in part Plaintiff's Motion to Compel (doc. # 32). The Court orders Defendant to comply with this order on or before December 21, 2011. Discovery close extended until February 6, 2012. Motion hearing that is set for December 6, 2011 is stricken. Status hearing set for January 26, 2012 at 9:30 a.m.

■[ For further details see below.]     Docketing to mail notice.

## STATEMENT

Resolving this motion to compel requires the Court to fight upwind against the bluster flowing from both sides. The Plaintiff, Ari Greebel, asserts a simple employment discrimination claim against the Defendant, Byron Udell & Associates (d/b/a Accuquote). Greebel argues that Accuquote has not complied with several discovery requests. Accuquote responds that much of Greebel's dispute is no dispute at all because it has amended its responses. Both sides devote more attention to attacking the character of the other side than the merits of their respective positions. Such efforts are wasteful both of the parties' resources and the Court's and the Court will not engage such arguments. That being said, the Court turns to the merits of the discovery dispute.

A major bone of contention between the parties is the relevance of Greebel's request. The Court first tackles this issue that permeates the dispute before proceeding to the individual discovery requests. Greebel applied for a position as an account executive at Accuquote. During his interview, he informed the company that he was an Orthodox Jew and that he could not work on Saturdays at all or Fridays later than sundown. After this information was shared, Accuquote refused to hire him. Greebel claims that Accuquote discriminated against him by refusing to hire him because he is Jewish. Accuquote asserts that the only reason it refused to hire him was because the position he interviewed for would require him to work both Friday evening and occasional Saturdays and that providing him with an alternative schedule would be an undue hardship. One way that Greebel may prove his claim is to proceed under the *McDonnell-Douglas* burden-shifting method. *Radentz v. Marion Cnty*, 640 F.3d 754, 757 (7th Cir. 2011). Under this framework, if Greebel sets forth a *prima facie* case and Accuquote provides a legitimate, non-discriminatory reason for its decision, Greebel must then prove that its reason is pretextual or false. *Id.* Accuquote claims it refused to hire Greebel because accommodating an alternate schedule would have been an undue hardship. If, however, Greebel can produce evidence that Accuquote accommodated other employees' alternate schedule requests, then that evidence is relevant to demonstrate that Accuquote's reason for refusing to hire him is false. Thus, any discovery requests directed at Accuquote's procedure for accommodating or history of allowing alternative work schedule are plainly relevant. Accuquote's arguments to the contrary wholly lack merit.

Page 1 of 3

## STATEMENT

The Court will address each request in turn. In Interrogatory 10, Greebel asks Accuquote to itemize all costs it believes it would have incurred had it allowed him to work a schedule that did not include work on Saturdays. Accuquote objects because the interrogatory calls for speculation. But the interrogatory does not call for speculation. Accuquote explains that the reason it did not hire Greebel is that allowing him to work an alternative schedule would have posed an "undue hardship." Greebel is entitled to discover the basis for Accuquote's reasoning that allowing him to work on Saturdays would have been an undue hardship. Without knowing the basis for Accuquote's reason, Greebel will have a difficult time in proving it to be false. If part of that hardship would have been financial, Accuquote should explain that financial hardship. Accuquote also explains that it has answered the interrogatory, pointing to its answer to Interrogatory 14. Rule 33(b)(1) requires that interrogatories be answered separately and not by incorporating responses to other interrogatories. Fed. R. Civ. P. 33(b)(1); *Magarl LLC v. Crane Co.*, 2004 WL 2750252, at *4 (S.D. Ind. 2004). This technical violation is a molehill and not a mountain, and the Court will not require Accuquote to amend its answer unless its answer to Interrogatory 14 is insufficient. Accuquote explains that to excuse Greebel from the Saturday schedule will result in decreased efficiency, decreased customer service, increased training and benefit costs. Greebel complains that these descriptions are too vague. The Court disagrees. Accuquote may not know precisely how much customer service would affect its bottom line by occasionally leaving the Saturday shift one employee short because it has never done so. It may not know precisely how much it would cost to shift staff around to cover Greebel's absence because it has not done so. Greebel might explore the basis for Accuquote's belief that allowing him to work an alternative schedule would impose financial costs upon it during depositions of the company's executives. The Court, however, finds that it has responded fairly and adequately to Interrogatory 10.

In Interrogatory 15, Greebel asks Accuquote to state whether his application for employment was in any way inadequate and identify the individuals who made the determination and the facts upon which the individuals rely. Accuquote states the reason it found the application to be inadequate and the facts upon which that decision is made but fails, entirely, to describe the individuals who made that decision. It must fully and fairly respond to the interrogatory.

Document Request 3 seeks the schedules of account executives from August 1, 2006 to August 1, 2008 (two one-year periods on either side of Greebel's application). Accuquote states that it no longer has the material. Greebel argues that Accuquote has admitted that it had the information when he first asked for it but has destroyed it. The fact of the matter is that Accuquote has no records and there is nothing to produce. Whether the loss or destruction of those records would support a spoliation argument is not before the Court.

Document Request 5 seeks all documents related to complaints about Saturday shifts. Accuquote fails to respond to this part of Greebel's motion. However, its response to the request claims that the material sought is not reasonably calculated to lead to discoverable information. As discussed earlier, the Court disagrees. Evidence of complaints regarding Saturday shifts may lead Greebel to an employee whose requests were accommodated, thus it is reasonably calculated to lead to evidence that may be relevant to demonstrate pretext. Accuquote responds further that all complaints were verbal. Of course, if that is the case, there is nothing to produce and it can state so clearly. Nonetheless, the Court directs Accuquote to review any written complaints it has received from employees to determine whether any are responsive to this discovery request.

Document Request 7 seeks documents reflecting written requests for shift transfers. Accuquote again argues that such information is not reasonably calculated to lead to discoverable information. Again, Accuquote's history of accommodating alternative schedules is plainly relevant to the issue of whether its reason for refusing to hire Greebel was pretextual. Accuquote states that has searched for such requests from August 2007 to December 2008 and found none. However, Greebel requested records for the period August 1, 2005 to August 1, 2009. The Court finds that Accuquote has not adequately responded to this Document Request. The Court will, however, limit Greebel's request to a 1-year period on either side of his application date (August 1, 2006 to August 1, 2008).

Document Request 8 seeks defendants policies regarding the process of scheduling of account executives on various shifts. Accuquote states that it has no written policies concerning scheduling. Greebel argues that it has an employee manual that contains a section on "work schedule." That manual may or may not be responsive to Greebel's request. If the manual contains information on how or when an employee may request an absence, the Court believes it would be responsive. If, on the other hand, it merely contains information concerning attendance expectations or business hours, then it would not.

## STATEMENT

Document Request 13 seeks payroll records for account executivs so that Greebel may calculate damages. Accuquote responds that it has prepared a chart for the salaries and bonuses of its account executivs for 2007. It has not produced the underlying documents. Accuquote argues that the W-2s are cumulative and that the information for 2008 is unnecessary because Greebel obtained employment in February 2008, thus limiting his damages. Accuquote's arguments are without merit. Greebel need not accept Accuquote's chart at face value and the W-2s thus are necessary to verify the accuracy of Accuquote's calculations. To make the request less burdensome, the Court will allow Accuquote to produce only a portion of the W-2s (20%) selected by Greebel. Should Greebel find discrepancies between the sample of W-2s and Accuquote's chart, the Court will order all W-2s to be produced. Further, information for 2008 is relevant because Greebel may have earned less at the job he obtained than he would have been able to earn at Accuquote.

Document Request 15 seeks resumes for account executives. Accuquote states that it has admitted that Greebel met the technical qualifications for the position so the information is not relevant. But Accuquote neglects to consider whether the information may be relevant in calculating damages. Because account executives are paid largely on commission, the skills and experience of the employees is necessary to reasonably calculate Greebel's damages. However, Greebel need not see the resumes of all employees. A representative sample will do. Greebel may select 20% of the employees' resumes to receive.

Finally, the Court reaches Interrogatory 7, the request where the parties have the most legitimate dispute. Interrogatory 7 seeks the names and contact information for Accuquote's account executives. Greebel argues that some of these employees might have information about their work schedules and whether Accuquote accommodated requests for alternative schedules. Accuquote raises a number of objections to the request. First, Accuquote argues that the interrogatory is unlikely to lead to discoverable information. As noted earlier, the Court finds this argument to be without merit. Second, Accuquote claims that the discovery request is unduly burdensome. Perhaps if Accuquote had kept and maintained adequate records of its employees work history, Greebel's interrogatory would seek duplicative information. But Accuquote claims that it has no written requests for schedule accommodations and further claims that it no longer has any records of employees work schedules prior to 2008. Greebel need not simply accept Accuquote's assertion that no employees ever worked alternate schedules without any sort of proof other than self-serving affidavit's to support the assertion. He is entitled to pursue evidence that might support his claim despite Accuquote's assertion. Finally, Accuquote arguing that Greebel's request is nothing more than a fishing expedition and that Greebel has no basis for believing any employee will have information about accommodating alternative schedules. Greebel, however, submits the affidavit of a former employee who supports his assertion that Accuquote allowed for flexible scheduling. Thus there is a reasonable possibility of that other employees might have similar experiences and provide additional evidence in support of Greebel's assertion. Accuquote attacks the affidavit, claiming the former employee is "disgruntled." This argument is nonsensical. The Court may not presume the former employee is committing perjury simply because he may have animosity towards Accuquote any more than it could presume that all affidavits of Accuquote executives must be filled with lies because they have a motive to help the company avoid liability. The former employee has made a sworn statement, and the Court will not presume he is lying simply because he is "disgruntled." Accuquote also claims the former employee's affidavit is "pure speculation." But that is simply false. The former employee testifies about facts within his personal knowledge. His experience provides a set of facts that might prove Accuquote's reason for refusing to hire Greebel was pretextual and the other employees may corroborate his statements. Thus, the request seeks discoverable information that, while burdensome, seeks information not available by other means due to Accuquote's own practices. Nevertheless, Greebel's request is overbroad. The Court will limit the interrogatory to Accuquote account executives who worked for the company some time in 2007, the year that Greebel applied for the position.

The Court orders Defendant to comply with this order on or before December 21, 2011. Because the parties put discovery on hold for a period of time to pursue settlement and mediation, the Court extends the discovery close until February 6, 2012.

*Wm. J. Hibbler*